IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BENJAMIN M. ANDREWS,
*Administrator of the estate of Zachary Tuggle,*

    **Plaintiff,**

v.                                                          Civil Action No. 3:17cv167

**SHERIFF C.T. WOODY,** *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on three motions filed by Plaintiff Benjamin M. Andrews, Administrator of the Estate of Zachary Tuggle ("Andrews"): (1) Andrews's Motion to Exclude Opinions of Jack Daniel, M.D. (the "Motion to Exclude Dr. Daniel"), (ECF No. 69); (2) Andrews's Motion to Exclude Imp[ro]per Medical Standard of Care and Proposed Causation Opinions of Nurse Allison Rego Ernest (the "Motion to Exclude Nurse Ernest"), (ECF No. 73); and, (3) Andrews's Motion to Exclude Opinions of William J. Brady, M.D. (the "Motion to Exclude Dr. Brady"), (ECF No. 71), (collectively, the "Motions to Exclude"). Defendants Naphcare, Inc., Demetrice Smith, Tracy Turner, Gwen Drake, Cecelia Faison, and Khairul Emran (collectively, "Defendants") responded to all three motions, (ECF Nos. 82, 83, 84), and Andrews replied, (ECF Nos. 85, 86, 87).

The Court heard oral argument on May 30, 2018. Neither party chose to call any witnesses. Accordingly, the matters are ripe for disposition. For the reasons that follow, the Court will: (1) grant the Motion to Exclude Dr. Daniel; (2) grant the Motion to Exclude Dr. Brady; and, (3) grant the Motion to Exclude Nurse Ernest.

## I. Factual and Procedural Background[1]

The action before the Court arises from Zachary Tuggle's incarceration at the Richmond City Justice Center ("RCJC") awaiting trial. Tuggle, who had a diagnosed seizure disorder at the time he entered the RCJC, experienced a fatal seizure while incarcerated there. Andrews thereafter filed a Complaint against various defendants alleging, on behalf of Tuggle's estate, violations of the Fourteenth Amendment,[2] state law gross negligence, and medical negligence. After Defendant Sheriff C.T. Woody filed a Motion to Dismiss, Andrews filed his Amended Complaint. The Court held an Initial Pretrial Conference and scheduled a jury trial to begin on May 9, 2018.

On March 5, 2018, upon motion by the parties, the Court dismissed Sheriff C.T. Woody and Charles Armstrong as defendants from this action. Only Defendants remain. After granting several joint motions for extensions of time, which ultimately impacted the scheduled trial date, the Court continued the jury trial and set a hearing date and a briefing schedule for dispositive and evidentiary motions.

The following causes of action, articulated in the Amended Complaint, remain:

**COUNT IV:** Medical Negligence Claim against Demetrice Smith, Tracy Turner, Gwen Drake, Cecelia Faison, and Khairul Emran;

**COUNT V:** Vicarious Liability Claim against Naphcare, Inc., based on the negligence of Demetrice Smith, Tracy Turner, Gwen Drake, Cecelia Faison, and Khairul Emran; and,

---

[1] The Court assumes familiarity with the factual and procedural history of this case based on its memorandum opinion ruling on Defendants' Motion for Summary Judgment, filed today. (ECF No. 92.)

[2] The Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

2

> **COUNT VI:** Section 1983 Claim against Demetrice Smith, Tracy Turner, Gwen Drake, Cecelia Faison, and Khairul Emran for Deliberate Indifference to Tuggle's Serious Medical Needs.

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B),[3] and as required by the Initial Pretrial Order, Defendants filed their expert witness designation on March 22, 2018, designating four expert witnesses. (ECF No. 67.) On April 9, 2018, Andrews timely filed the Motions to Exclude.

## II. Legal Standard

Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (second alteration in original)). "'There are many different kinds of experts, and many different kinds of expertise.' The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him [or her] to testify as an expert in all related areas." *Shreve v.*

---

[3] Rule 26(a)(2)(B) requires that a party intending to use an expert witness at trial must disclose that witness's identity to the opposing party, and

> [u]nless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

*Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) (quoting *Kumho Tire*, 526 U.S. at 150).

> Rule 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and[,]
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702's requirement "that the evidence or testimony '[help] the trier of fact to understand the evidence or to determine a fact in issue'" goes primarily to relevance. *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702) (noting that expert testimony must be relevant).

Although experiential testimony does not rely on the scientific method, "this does not lead to a conclusion that 'experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). Thus, although "a district court's task in examining the reliability of experiential expert testimony is therefore somewhat more opaque," to be qualified under Rule 702, "an experiential expert witness [must] 'explain how [his or her] experience leads to the conclusion reached, why [his or her] experience is a sufficient basis for the opinion, and how [his or her] experience is reliably applied to the facts.'" *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

4

In determining whether proffered expert testimony is sufficiently reliable so as to assist the trier of fact, *Daubert* suggests that courts consider several non-dispositive factors: (1) whether the expert's methodology can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and, (4) whether the theory or technique has gained general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593–94. This analysis applies to all proffered specialized knowledge, not solely scientific expert testimony. *Kumho Tire*, 526 U.S. at 141. "Under [Federal Rule of Evidence] 104(a),[4] the proponent of the expert testimony must establish the admissibility of the testimony by a preponderance of the evidence." *Lee v. City of Richmond*, No. 3:12cv471, 2014 WL 5092715, at *2 n.2 (E.D. Va. Sept. 30, 2014).

### III. Analysis: The Court Will Exclude the Opinion Testimony of Dr. Daniel

Dr. Daniel's report and opinions must be excluded because he articulates no principles or methods on which he relied to reach his conclusions, rendering his report noncompliant with Rule 26. The failure to articulate any principles or methods also makes his opinions unreliable and excludable under Rule 702(c) and (d). Further, Dr. Daniel seeks to offer testimony on the weight of the evidence, making his opinions unhelpful, irrelevant, and potentially confusing, and thus excludable under Rule 702(a) and Rule 403. Defendants' contentions otherwise do not

---

[4] Rule 104(a) states in full:

> **(a) In General.** The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

Fed. R. Evid. 104(a).

prevail.[5] For the reasons outlined below, the Court will grant Andrews's Motion to Exclude Dr. Daniel.

### A. Dr. Daniel's Report Fails to Comply with Rule 26

As an initial matter, the Court could exclude Dr. Daniel's testimony because, in violation of the federal rules, the expert report Defendants submitted fails—on its face—to comply in any meaningful way with the standards of Federal Rule of Civil Procedure 26(a)(2)(B). Dr. Daniel's report offers conclusions in three paragraphs. His report contains simply "conclusions offered without any explanation as to [his] bases or reasoning. That, of course, runs afoul of the provisions of [Rule] 26(a)(2)(B)." *Lee*, 2014 WL 5092715, at *11, n.13.

---

[5] The entirety of Defendants' arguments that Dr. Daniel's opinions should be admitted is included in a three-page Memorandum in Opposition. (*See* Resp. Mot. Exclude Dr. Daniel 2–3, ECF No. 84.) The Memorandum cites to *no* legal authority. Apparently seeking to justify this approach, Defendants assert that "[t]hough Plaintiff has cited extensive case law and ha[s] penned a voluminous brief, in response the Defendants do not believe an equivalent response is necessary." (*Id.* at 2.) Defendants then state:

> Simply put, Dr. Daniel's opinions are probative, relevant, based in science/medicine i.e are scientifically based principles and methods that have been reliably applied to the facts of this case, and accordingly, they should not be and must not be excluded. The opinions are not merely based on his experience, as Plaintiff has somehow decided to latch onto that phrase. Indeed, his experience as a pathologist merely lends further credence and reliability to the opinions which he advances. No extensive case law is necessary when an expert has provided opinions which are basic medical opinions about causation. Plaintiff is grasping at straws. The opinions are relevant, meet the relevant standard, and admissible and should not be excluded.

(*Id.* at 2–3.)
As the proponent of Dr. Daniel's testimony, Defendants have "the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note to 2000 amendment (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)). Defendants have failed to carry that burden, and the Court could exclude Dr. Daniel's testimony on that basis alone.

In three paragraphs of his report, Dr. Daniel offers the following opinions:

(1) "Mr. Tuggle's death is consistent with cardiac arrest secondary to respiratory arrest as a result of airway obstruction from aspiration of food into the lower airway."

(2) "[T]here is no evidence either grossly or microscopically in the lungs or airways to suggest that there was any chemical exposure from ammonia to these tissues."

(3) "The edema . . . in [Tuggle's] lungs is readily consistent with aspiration of food/emesis."

(4) "There is no evidence to suggest that there was ever any large amount of blood present as is described in the EMS report authored by Samantha Bako . . . ."

(5) "[A]lthough other eyewitnesses described the presence of blood, *the amount of blood is only described as a large volume by paramedic Bako.*"

(6) "[B]ased on the pathology, there is no indication of any source of a large volume of blood. The GI tract is free of any sources of bleeding or significant accumulations of blood, and the lungs do not show evidence of bleeding. The only other place that could have been a blood source is the oral-pharynx or nose, and no hemorrhagic lesions were identified at autopsy."

(7) "[T]he likely explanation for the blood is either that the oral-pharynx and/or naso-pharynx may have been injured during resuscitative efforts (to include insertion of the King airway or previous intubation efforts), or from an impact of [Tuggle's] face with a hard surface."

(8) "Although it is unclear where the blood came from, *the evidence does not establish that a large volume of blood was present.*"

(9) "[A] person with a history of seizure disorder has a neurological condition that further predisposes them to diminished reflexes and situational awareness in regard to guarding the airway from aspiration."

(10) "When Mr. Tuggle vomited, he aspirated, his airway became compromised, rendering any incidental bleeding above that level largely irrelevant with respect to breathing once the airway was obstructed."

(11) "[Tuggle's] cardiac arrest was the result of respiratory arrest secondary to airway obstruction from aspiration of stomach contents."

(Dr. Daniel Rep. 2, ECF No. 67-9 (emphases added).)

Although Dr. Daniel states on the first page of his report that he "based [his] opinions on [his] education, training, and experience[,] as well as a review of [seven] items," he provides no explanation of the basis for any of his opinions and therefore fails to establish that his opinions are based on reliable principles and methods. This failure violates the plain language of Federal Rule of Civil Procedure 26(a)(2)(B) which requires that an expert report contain "a complete statement of all opinions the witness will express *and the basis and reasons for them.*" Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). The Court could exclude Dr. Daniel's report and testimony on that basis alone.

### B. Dr. Daniel's Opinions Are Unreliable and Unhelpful in Violation of Rule 702(a), (c), and (d)

Dr. Daniel's opinions also must be excluded because Dr. Daniel fails to "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (alteration in original) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). This failure renders his opinions unreliable and inadmissible. *See* Fed. R. Evid. 702(c)–(d) (requiring that expert testimony be "the product of reliable principles and methods . . . reliably applied . . . to the facts of the case"). Requiring that an expert's opinions be reliable constitutes a bedrock part of a district court's gatekeeper function under Rule 702. *See, e.g.,* Fed. R. Evid. 702 advisory committee's note to 2000 amendment. ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony . . . ."). Dr. Daniel states that he "based [his] opinions on [his] education, training, and experience[,] as well as a review of [seven] items," (Dr. Daniel Rep. 1), but he fails to explain the basis for his individual opinions or note how his education, training, and experience, or review of the relevant items led him to reach his conclusions.

8

In briefing, Defendants contend that Dr. Daniel's opinions "are based on all the data available and all that someone in the field of pathology would use to provide conclusions on the cause of death." (Resp. Mot. Exclude Dr. Daniel 2.) They argue that "reviewing tissue recuts, analyzing an autopsy report, and reviewing medical records[] are clearly acceptable methods for a pathologist to utilize to come to conclusions about a cause of death." (*Id.*) And at oral argument, counsel for Defendants asserted that Dr. Daniel states his opinions as a differential diagnosis. Dr. Daniel's report, of course, lacks any of these explanations, and Defendants chose not to present Dr. Daniel's testimony—either via deposition or by calling him as a witness during the scheduled hearing on the Motions to Exclude. The Court, therefore, is left unable to discern how and why Dr. Daniel reached the conclusions he did. Defendants cannot bolster or add to Dr. Daniel's report in briefing or argument on a motion to strike. *See, e.g., Wagoner v. Lewis Gale Med. Ctr., LLC*, No. 7:15cv570, 2016 WL 7183162, at *7 (W.D. Va. Dec. 8, 2016) ("[T]he duty and ability to supplement [an expert report] 'does not permit a party to make an end-run around the normal timetable for conducting discovery.' Rule 26(e)[6] authorizes only 'true supplementation,' like 'correcting inadvertent errors or omissions;' not the addition of new information." (citations omitted)).

Indeed, even assuming that a review of the materials Defendants identify does constitute a reliable principle or method for forming a cause-of-death opinion, an expert must still identify *how* his or her review of materials led to his or her stated opinions. An expert may not—as Dr.

---

[6] Federal Rule of Civil Procedure 26(e) provides for supplementation of expert reports: "[T]he party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e). In this case, and as relevant to Dr. Brady's report, "pretrial disclosures under Rule 26(a)(3)" were due on April 6, 2018. (*See* Feb. 9, 2018 O. 2, ECF No. 53 (ordering that all rebuttal expert disclosures are due by April 6, 2018).)

9

Daniel has—simply state in a conclusory manner that his or her opinions are based on a review of relevant materials. Dr. Daniel's report contains no explanation of how his review of such material resulted in his opinions, or any methods on which he relied in conducting that review. His testimony is therefore unreliable and must be excluded. *See* Fed. R. Evid. 702(c)–(d).

Finally, Dr. Daniel's testimony also must be excluded because, without any explanation of his underlying methods, several of his opinions amount to comparisons and evaluations of evidence—something solely within the province of the jury. Dr. Daniel's opinions that, "[t]here is *no evidence to suggest that there was ever any large amount of blood present* as is described in the EMS report authored by Samantha Bako . . . ."; "although other eyewitnesses described the presence of blood, *the amount of blood is only described as a large volume by paramedic Bako*"; and, "[a]lthough it is unclear where the blood came from, *the evidence does not establish that a large volume of blood was present*," (Dr. Daniel Rep. 2 (emphasis added)), essentially amount to opinions as to the credibility of Bako's statements. These opinions—presented as Dr. Daniel does, without explanation of the principles and methods on which he relied to reach them— invade the province of the jury, are unhelpful, irrelevant, and potentially confusing.[7]

The jury—not an expert—has the responsibility to evaluate the evidence and determine, for example, whether "the evidence [does or] does not establish that a large volume of blood was present." (Dr. Daniel Rep. 2.) An expert's opinion on the matter, offered without explanation of *how* the expert arrived at that opinion, is not helpful and should be excluded. *See* Fed. R.

---

[7] Federal Rule of Evidence 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Allowing Dr. Daniel to present "expert" opinions on discrepancies in the evidence without basing his opinions on any articulated principles or methods could confuse the jury and result in the jury incorrectly believing that expert testimony is necessary to weigh the probative value of evidence.

Evid. 702(a) (requiring that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue"); *see also* Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules ("Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. 'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained lay[person] would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'"[8] (quoting Mason Ladd, *Expert Testimony*, 5 Vand. L. Rev. 414, 418 (1952)); *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993) ("[E]xpert testimony is only permitted if it assists the trier of fact to understand evidence or to determine a fact in issue. . . . [when expert] testimony is within the common knowledge of the jurors, almost by definition, [it] can be of no assistance to a jury." (citations omitted)).

The Court will grant Andrews's Motion to Exclude Dr. Daniel because: (1) Dr. Daniel's report fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B); (2) Dr. Daniel does not articulate the principles or methods on which he based his opinions, making his opinions unreliable and excludable under Rule 702(c) and (d); and, (3) he offers opinions on matters that invade the province of the jury and are within the common knowledge of jurors, rendering his opinions unhelpful, irrelevant, and potentially confusing, and thus excludable under Rule 702(a) and Rule 403.

---

[8] This common sense legal principle rings especially true when a jury considers facts in the record beyond those upon which a purported "opinion" relies. For instance, Dr. Daniel's premise that Bako serves as the only source reporting a large amount of blood ignores the deposition testimony of Eric Meyer, an EMT who arrived at RCJC with Bako. In sworn testimony, Meyer described the scene as a "normal cardiac arrest scene," that involved "all the blood. . . . Everything kind of happened as normal, . . . other than it being just messier than normal." (Meyer Dep. 16, ECF No. 81-6.) Dr. Daniel's failure to acknowledge this testimony remains unexplained and further highlights the lack of reliability to his opinions.

## IV. Analysis: The Court Will Exclude the Challenged Opinions of Nurse Ernest

Nurse Ernest's testimony must be excluded for reasons similar to those requiring the exclusion of Dr. Daniel's opinions. Nurse Ernest articulates no principles or methods on which she relied to reach her conclusions, rendering her report noncompliant with Rule 26. This failure to articulate any principles and methods also makes her opinions unreliable and inadmissible under Rule 702(c) and (d). For the reasons outlined below, the Court will grant Andrews's Motion to Exclude Nurse Ernest.[9]

### A. Nurse Ernest's Report Fails to Comply with Rule 26

The Court could exclude the testimony of Nurse Ernest because, in violation of the federal rules, the report Defendants submitted, like the report they submitted for Dr. Daniel, fails—on its face—to comply in any meaningful way with the standards of Federal Rule of Civil Procedure 26(a)(2)(B). Nurse Ernest's report offers conclusions in three paragraphs which contain simply "conclusions offered without any explanation as to [her] bases or reasoning. That, of course, runs afoul of the provisions of [Rule] 26(a)(2)(B)." *Lee*, 2014 WL 5092715, at *11, n.13.

In three paragraphs of Nurse Ernest's report, she offers the following opinions:

(1) "[T]he staff complied with the standard of care in their response to the medical 10-18 for Zachary Tuggle."

(2) "The medical staff did not delay in responding to the medical 10-18."

(3) The medical staff "also provided appropriate care to Mr. Tuggle upon arrival at his cell."

---

[9] Andrews argues that Nurse Ernest's testimony should be excluded because, as a nurse, she lacks qualification to testify regarding either causation or the standard of care for a doctor, and because her opinions are cumulative to Dr. Brady's. Nurse Ernest's opinions, however, falter on more fundamental levels than those, and the Court will exclude her opinions for failing to meet the standards of Rule 702(c) and (d).

(4) "Steps were taken to clear his airway, turn him on his side, and CPR was started. All these measures were reasonable and appropriate."

(5) "Also, an AED was utilized, which was also appropriate."

(6) "[T]he necessary vital signs were checked. Respirations and pulse were both assessed by the staff before CPR was initiated. This was appropriate and in keeping with BLS protocol."

(7) "Basic Life Support does not involve a blood pressure check. Initiating compressions are [sic] the most important part of BLS protocol."

(8) "The staff acted quickly and appropriately to assess Mr. Tuggle on arrival at his cell."

(9) "The staff was not required to place an airway or to provide oxygen. These are not part of BLS protocol."

(10) "It is my opinion that the medical [staff] performed CPR appropriately until the arrival of EMS."

(11) "EMS described a difficult airway and were unable to intubate Mr. Tuggle using a traditional airway. He required extensive suction as well, and the EMS provider had to use a King airway. Therefore, whether or not the medical staff had utilized suction equipment with Mr. Tuggle would not have successfully cleared his airway as the need for a King demonstrates that his airway was blocked beyond what any crash cart suction could have affected."

(12) "The staff's mouth sweep for visible contents (emesis) in this scenario was reasonable and appropriate, and they appropriately prioritized establishing circulation."

(Nurse Ernest Rep. 2–3, ECF No. 67-13.)

Although Nurse Ernest begins her "Opinions" section by stating that she bases her opinions on her "education, training, and experience, as well as the review of the materials provided," she—like Dr. Daniel—provides no explanation of the basis for her opinions and fails to establish that her opinions are based on reliable principles and methods. This failure violates the plain language of Federal Rule of Civil Procedure 26(a)(2)(B) which requires that an expert report contain "a complete statement of all opinions the witness will express *and the basis and*

*reasons for them.*" Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). The Court could exclude Nurse Ernest's report and testimony on that basis alone.

    **B.**    <u>**Nurse Ernest's Opinions Are Unreliable in Violation of Rule 702(c) and (d)**</u>

Nurse Ernest's opinions also must be excluded because her failure to "explain how [her] experience leads to the conclusion reached, why [her] experience is a sufficient basis for the opinion, and how [her] experience is reliably applied to the facts," *Wilson*, 484 F.3d at 274 (alteration in original) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment), renders her opinions unreliable and inadmissible. *See* Fed. R. Evid. 702(c)–(d) (requiring that expert testimony be "the product of reliable principles and methods . . . reliably applied . . . to the facts of the case"). Requiring that an expert's opinions be reliable constitutes a crucial facet of a district court's gatekeeper function under Rule 702. *See, e.g.*, Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony . . . ."). Nurse Ernest states that she bases her opinions on her "education, training, and experience, as well as the review of the materials provided," (Nurse Ernest Rep. 2), but she fails to explain the basis for her individual opinions or note how her education, training, and experience led her to reach her conclusions.

As to Andrews's challenge that Nurse Ernest is unqualified to render an opinion regarding the standard of care for a doctor, Defendants respond that "four of the five individual defendants in this case can be classified as nursing staff, and thus, [Nurse Ernest] is qualified to provide standard of care opinions as to these individuals." (Resp. Mot. Exclude Nurse Ernest 3, ECF No. 82.) In their expert witness disclosures, Defendants identified Nurse Ernest as an expert "expected to testify on the standard of care provided by the NaphCare personnel responding to the medical 10-18 . . . excluding Dr. Khairul Emran." (Defs.' Expert Witness

14

Discl. 5, ECF No. 67.) Defendants also admit that "there was ambiguity in [Nurse Ernest's] report as to whom she was opining about with regard to the standard of care," although they contend that this ambiguity constituted "the only real issue." (Resp. Mot. Exclude Nurse Ernest 3.)

More importantly, however, nothing before the Court establishes the standards by which Nurse Ernest purports to evaluate the care Defendants provided Tuggle during the Medical 10-18. Although she opines that the medical staff followed Basic Life Support protocol in various ways, Nurse Ernest never identifies *what* Basic Life Support protocol is, how she has established expertise in that protocol,[10] or how she applied that protocol and her expertise to the facts of the case to reach her conclusions. Nurse Ernest lists a series of steps the "medical staff" took in their response to the Medical 10-18, and then states in a conclusory manner: "All these measures were reasonable and appropriate." (Nurse Ernest Report 2.) Nothing in the record before the Court explains *how* or *why* Nurse Ernest reached the conclusion that the measures were "reasonable and appropriate." She never explains "how [her] experience leads to the conclusion reached, why [her] experience is a sufficient basis for the opinion, and how [her] experience is *reliably applied to the facts.*'" *Wilson*, 484 F.3d at 274 (emphasis added) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

Defendants have not established that Nurse Ernest's opinions meet the basic requirements of Rule 702, which allows opinion testimony only when a witness "is qualified as an expert by knowledge, skill, experience, training, or education," and only when the testimony is "the

---

[10] Nurse Ernest includes several certifications and skills in her C.V., none of which specifically reference Basic Life Support protocol. At oral argument, counsel for Defendants stated that the American Red Cross helps establish Basic Life Support protocol. But despite having the opportunity to do so, Defendants did not present any testimony from Nurse Ernest— either through deposition or by calling her to testify at the hearing—establishing that explanation, or how it related to her expertise in Advanced Cardiac life Support.

15

product of reliable principles and methods . . . reliably applied . . . to the facts of the case." Fed. R. Evid. 702. Her testimony is therefore unreliable and must be excluded. The Court will grant Andrews's Motion to Exclude Nurse Ernest because her failure to articulate any principles or methods on which she based her opinions renders her opinions unreliable and excludable under Rule 702(c) and (d).

### V. Analysis: The Court Will Exclude the Challenged Opinion of Dr. Brady

Andrews seeks to exclude only one opinion of Dr. Brady: his opinion, on the third page of his report, that

> the EMS note was not professionally constructed, and . . . there is no other evidence anywhere to support the assertion that ammonia packets were actually placed into Mr. Tuggle's nose. There is also no documentation concerning the removal of the packets or what was done with the packets after they were ostensibly removed.

(Dr. Brady Rep. 3, ECF No. 67-5.) The Court has no hesitation concluding that this opinion must be excluded for many of the same reasons Dr. Daniel's and Nurse Ernest's opinions are inadmissible.

First, as to this opinion, Dr. Brady articulates no principles and methods on which he relied to reach his conclusion, rendering this portion of his report noncompliant with Rule 26 and also making his opinion unreliable and excludable under Rule 702(c) and (d). Further, this opinion touches on evidence that is within the common knowledge of the jury, resulting in his opinions being unhelpful, irrelevant, and potentially confusing, and therefore excludable under Rule 702(a) and Rule 403. For the reasons outlined below, the Court will grant Andrews's Motion to Exclude Dr. Brady.

#### A. Dr. Brady's Challenged Opinion Fails to Comply with Rule 26

As an initial matter, the Court could exclude the challenged testimony of Dr. Brady because, in violation of the federal rules, that portion of his report fails—on its face—to comply

in any meaningful way with the standards of Federal Rule of Civil Procedure 26(a)(2)(B). As to the penultimate paragraph of his report, which states the challenged opinion, his report contains simply "conclusions offered without any explanation as to [his] bases or reasoning. That, of course, runs afoul of the provisions of [Rule] 26(a)(2)(B)." *Lee*, 2014 WL 5092715, at *11, n.13.

> Dr. Brady's challenged opinion states in full:
>
> It is my opinion that the EMS note was not professionally constructed, and that there is no other evidence in the record to support the assertion that ammonia packets were actually placed into Mr. Tuggles's [sic] nose. There is also no documentation concerning the removal of the packets or what was done with the packets after they were ostensibly removed.

(Dr. Brady Rep. 3.)

Although Dr. Brady states on the first page of his report that he "reviewed [numerous identified] materials in order to arrive at [his] opinions, and additionally base[s his] opinions on [his] education, training, and experience," Dr. Brady provides no explanation of the basis for this opinion. This failure violates the plain language of Federal Rule of Civil Procedure 26(a)(2)(B) which requires that an expert report contain "a complete statement of all opinions the witness will express *and the basis and reasons for them.*" Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). The Court could exclude the final paragraph of Dr. Brady's report and testimony on that basis alone.

### B. Dr. Brady's Challenged Opinion Is Unreliable and Unhelpful in Violation of Rule 702(a), (c), and (d)

Dr. Brady's report contains no explanation of how or why "the EMS note was not professionally constructed," instead stating this opinion in a conclusory manner. (Dr. Brady Rep. 3.) In briefing, Defendants identify three specific phrases Bako used in the Patient Care Report, and note that the Patient Care Report also failed to indicate what Bako did with the

17

ammonia packets she found. Dr. Brady's report, of course, contains no such explanation for his opinion on the level of professionalism exhibited in Bako's report, and Defendants cannot bolster Dr. Brady's report in briefing on a motion to strike. *See, e.g., Wagoner*, 2016 WL 7183162, at *7; Fed. R. Civ. P. 26(e).

Moreover, the challenged opinion in Dr. Brady's report must be excluded because, as to that opinion, he fails to "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (alteration in original) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). During oral argument, counsel noted that Dr. Brady has read numerous reports, but conceded that Dr. Brady did not anchor his conclusions about Bako's un-professional tone to any particular basis.

This failure renders his opinion unreliable and inadmissible. *See* Fed. R. Evid. 702(c)–(d) (requiring that expert testimony be "the product of reliable principles and methods . . . reliably applied . . . to the facts of the case"). Requiring that an expert's opinions be reliable constitutes a fundamental aspect of a district court's gatekeeper function under Rule 702. *See, e.g.*, Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony . . . ."). As discussed, Dr. Brady states only that he "reviewed [numerous identified] materials in order to arrive at [his] opinions, and additionally base[s his] opinions on [his] education, training, and experience," (Dr. Brady Rep. 1), but he fails to explain the basis for this individual opinion or note how his education, training, and experience led him to reach this conclusion. His testimony as to this opinion is therefore unreliable and must be excluded. *See* Fed. R. Evid. 702(c)–(d).

Finally, the penultimate paragraph of Dr. Brady's report must also be excluded because his opinions in that paragraph amounts to an evaluation of evidence that is within the common knowledge of the jury, resulting in his opinions being unhelpful, irrelevant, and potentially confusing.[11] The challenged opinions address the contents of paramedic Bako's EMS report and the extent to which other evidence in the record corroborates or fails to corroborate her statements about removing ammonia packets from Tuggle's nose. While counsel for Defendants may cross-examine Bako about her report, absent a proper foundation establishing that his opinions are "the product of reliable principles and methods . . . reliably applied . . . to the facts of the case," Fed. R. Evid. 702(c)–(d), this opinion differs little from a layperson's evaluation of the evidence in the record, invades the province of the jury, and is unhelpful. An expert's opinion on a matter that is within the common knowledge of the jury is not helpful and must be excluded under Rule 702. *See* Fed. R. Evid. 702(a) (requiring that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue"); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment; *Harris*, 995 F.2d at 534. Because Defendants failed to establish a proper basis for him to testify as to the challenged opinion, the Court cannot allow Dr. Brady to weigh in on the veracity of evidence.

The Court will grant Andrews's Motion to Exclude Dr. Brady because: (1) Dr. Brady's report fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B) as to the challenged opinion; (2) he articulates no principles or methods on which he bases the challenged opinion,

---

[11] Federal Rule of Evidence 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Allowing Dr. Brady to present opinions that are not based on "scientific, technical, or specialized knowledge," Fed. R. Evid. 702, and that amount to an evaluation of the evidence could confuse the jury and result in the jury incorrectly believing that expert testimony is necessary to weigh the probative value of evidence.

making that opinion unreliable and excludable under Rule 702(c) and (d); and, (3) the challenged opinion is on a matter that is within the common knowledge of jurors, rendering it unhelpful, irrelevant, and potentially confusing, and thus excludable under Rule 702(a) and Rule 403.

### VI. Conclusion

For the foregoing reasons, the Court will grant the Motion to Exclude Dr. Daniel, grant the Motion to Exclude Dr. Brady, and grant the Motion to Exclude Nurse Ernest. An appropriate Order will issue.

It is SO ORDERED.

/s/
M. Hannah Lauck
United States District Judge

Date: 5/31/2018
Richmond, Virginia